799 A.2d 731 (2002)
352 N.J. Super. 216
MATERIAL DAMAGE ADJUSTMENT CORPORATION, as servicing agent for GSA Insurance Company, National Consumer Insurance Company, and Newark Insurance Company, Plaintiff,
v.
OPEN MRI OF FAIRVIEW, Dr. Paul Pevsner, individually and/or as Assignees of the Defendants in Interest, John Does 1 through 100 (fictitious), et al., Defendants.
v.
Wanda Acosta, et al., Defendants in Interest.
Superior Court of New Jersey, Law Division, Civil Part, Hudson County.
Decided March 19, 2002.
*733 John R. Dineen, Jersey City, for plaintiff, Netchert, Dineen & Hillmann, attorneys.
Anthony J. Pope, Newark, Open MRI of Fairview and Dr. Paul Pevsner, for defendants, Pope, Bergrin & Verdesco, attorneys.
*732 FUENTES, J.S.C.
This matter comes before the court by way of plaintiff's motion for summary judgment seeking a judicial declaration that (1) defendant, Open MRI of Fairview, (Open MRI) was not legally entitled to receive compensation under N.J.S.A. 39:6A-4 (PIP) for radiological services provided to its insureds during a two year period when defendant was not licensed by the State Department of Health and Senior Services; and (2) finding that the receipt of these PIP payments by Open MRI constitutes a violation of the New Jersey Insurance Fraud Prevention Act. N.J.S.A. 17:33A1-30. Defendant has crossed moved for summary judgment seeking opposite legal conclusions from this court. Oral argument on the motions was heard on March 8, 2002. These motions present issues of first impression. This court is satisfied that there are no genuine issues of material facts in dispute and the matter is therefore ripe for disposition as a matter of law. R. 4:46-2; Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995).

FACTUAL FINDINGS
Plaintiff, National Consumer Insurance Company (NCIC) is an automobile insurance carrier licensed to do business within the State of New Jersey. On March 24, 1997, MRI of Fairview, Inc., filed a Certificate of Incorporation with the Secretary of State listing John Galdi and Raymond Carolonza of Boonton, New Jersey as directors.[1] On or about July 1, 1997, MRI of Fairview filed an application for a Certificate of Need with the State Department of Health and Senior Services under the provisions of N.J.A.C. 8:33-5.1 to operate a magnetic resonance imaging center in the town of Fairview. By letter dated August 27, 1997, the State Department of Health and Senior Services, acting through the person of Commissioner Len Fishman, notified Mr. Galdi, President of MRI of Fairview, Inc., that its application for a Certificate of Need had been approved. After discussing the nature and purpose of the Certificate of Need process as expressed by the Legislature in N.J.S.A. 26:2H-8, Commissioner Fishman ended the letter with this unequivocal directive:
Please be advised that this approval is limited to the proposal as presented and reviewed. An additional review by the Department may be necessary if there is any change in project cost, scope or financing, as defined at N.J.A.C. 8:33-3.9.(Sic) A representative from MRI of Fairview should contact the Department of Community Affairs to discuss any construction plans which may be necessary to establish this service. Finally, please be advised that services may *734 not commence until such time as a license has been issued by the Certificate of Need and Acute Care Licensure Program. (Emphasis added.)
Thereafter, despite this clear admonition, Open MRI began operating a magnetic resonance imaging facility located at 178 Bergen Boulevard, Fairview, New Jersey. It is undisputed that Open MRI operated this facility and received payments from NCIC for services performed to individuals eligible for benefits under N.J.S.A. 39:6A-4 (PIP) from on or about September 1997 to June 8, 1999. The claims for payment were submitted by Open MRI to the plaintiff on a Health Insurance Claim Form (HICF), a uniform claims instrument generally utilized in the insurance industry and approved by the Federal Office of Management and Budget. The HICF requires the signature of the physician or supplier of the medical services as an attestation to the veracity of the claim. Although plaintiff has failed to present competent proof as to the precise number of HICFs submitted during the relevant time period, defendant agrees that hundreds, perhaps thousands of claims were submitted and paid.
In support of its legal position herein, Open MRI has submitted the certification of Dr. Paul Pevsner, a Board Certified radiologist licensed to practice medicine in this State.[2] Dr. Pevsner describes himself as Open MRI's "medical director." He was "appointed" to the position of medical director in September, 1997 and has "served continuously thereafter." Although he asserts that Open MRI is the only MRI facility where he is the "medical director," he does "read films for other facilities." Defendant has not presented any evidence which discloses: (1) who "appointed" Dr. Pevsner to the position of medical director; (2) whether he has any ownership interest in Open MRI; and (3) the manner and amount of his compensation.
During this unlicensed time period Dr. Pevsner claims to have utilized his "professional experience" and "tailored" the Department of Health's guidelines to allegedly create a Policy and Procedures Manual to be used by the technical staff of Open MRI. These were the individuals who operated the radiological equipment and performed the actual MRI tests on the patients. According to Dr. Pevsner, although the facility was in operation since September of 1997, a "written manual memorializing these guidelines" was not completed until May 27, 1999. The record before this court is barren as to any competent proof that such an unauthorized "Manual" was in any way in compliance with the legal requirements promulgated by the State Department of Health or any other governmental agency having licensing and/or oversight responsibility for the construction and operation of this type of medical facility.
Despite the absence of even unauthorized written guidelines, Dr. Pevsner asserts that he visited "with the ... technologists on site 2-4 times weekly and spend an average of 4-5 hours on each visit." (Emphasis added.) On these visits he would also "inject patients as needed, review scans on TV monitors, review the protocols, speak with the technologists and discuss... [his] critiques in conjunction with the files." Dr. Pevsner's actual reading of the MRI films was done from a remote location, via the Internet, "over the phone lines 6 days per week." In the *735 course of reading the films he made written comments to the technical staff "regarding the quality, performance and technique of the imaging studies so as to attain the finest possible product." Conspicuously missing from this off-site analysis are the means of determining the quality and safety of the patient's experience when the actual test is performed by unsupervised non-medical staff.
On January 27, 1999, John A. Calabria, Director, Certificate of Need and Acute Licensure Program for the State Department of Health, sent a certified letter to defendant formally notifying it that his office had received information that Open MRI was providing magnetic resonance imaging services without a license. The letter directed defendant to respond to a series of written questions to permit the State Department of Health to ascertain whether Open MRI fell within the grandfather provisions of N.J.S.A. 26:2H-7. Open MRI was given ten days to provide this information. There is no evidence before this court that Open MRI ever supplied this information. In fact, Open MRI concedes that it was not eligible to take advantage of the statutory grandfather provisions. Inexplicably, there is also no evidence before this court that the State Department of Health took any steps to investigate this matter any further or otherwise imposed any type of sanction upon Open MRI.
On April 19, 1999, the State Department of Health published a notice in the New Jersey Register entitled "Certificate of Need and Acute Care Licensure Notice Concerning Licensure of Entities Providing Magnetic Resonance Imaging (MRI) Services" which read:
Take notice that, in compliance with N.J.S.A. 26:2H-1 et seq..., the Department of Health and Senior Services (Department) hereby publishes notice of the requirement for all entities providing magnetic resonance imaging (MRI) services to be inspected and annually licensed by the Department. MRI services are inspected according to the ambulatory care standards set forth in N.J.A.C. 8:43A. Failure to become licensed may subject the entity to penalties, including civil monetary fines, for operation of a health care facility without the required license. However, for one time only, and only for MRI services, if a licensure application is submitted on or before September 1, 1999, and a license is issued on or before December 31, 1999, no penalties shall be imposed.
Despite Open MRI's record of noncompliance with prior efforts to ostensibly investigate and determine its licensing status, pursuant to the above cited notice, the State Department of Health: (1) issued a license to operate a magnetic resonance imaging facility effective June 8, 1999, to June 30, 2000, to Open MRI; and (2) did not impose any monetary penalties or other sanctions.

LEGAL ANALYSIS

A) Eligibility to Receive PIP Payments
Open MRI's right to seek and collect payment for services rendered to the various individuals insured by plaintiff flows from and is governed by the New Jersey Automobile Reparation Reform Act. N.J.S.A. 39:6A-1 to 35. The Legislature amended the Act in 1998 with the expressed purpose of containing the escalating cost of automobile insurance in this State. N.J.S.A. 39:6A-1.1. One of the principal means of containing insurance premiums is the detection and deterrence of insurance fraud.
It is generally recognized that fraud, whether in the form of inappropriate *736 medical treatments, inflated claims, staged accidents, falsification of records, or any other form, has increased premiums, and must be uncovered and vigorously prosecuted... N.J.S.A. 39:6A-1.1.
Against this public policy backdrop this court will analyze and determine whether Open MRI had the legal right to render magnetic resonance imaging services and submit claims to and receive payments from plaintiff, without a duly issued license from the State Department of Health.
N.J.S.A. 39:6A-2 9(c) defines "medical expenses" to encompass any reasonable and necessary expenses for the medical treatment of the insured, including diagnostic services provided by a health care provider. N.J.S.A. 39:6A-2 (I) defines the term "health care provider" to include radiology and diagnostic facilities licensed by the Department of Health and Senior Services. In this light, there is no question that in order to be eligible to receive payments from plaintiff, Open MRI had to meet the statutory definition of "health care provider."
The State Department of Health's Legislative mandate to oversee the operations of health care diagnostic facilities such as Open MRI is found in the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 to 91. The statutory definitions of "health care facility" and "health care services" specifically refer to diagnostic services. N.J.S.A. 26:2H-2 (a)(b). Furthermore, the statute makes a clear distinction between a "health care facility" such as Open MRI and a "health care provider" such as Dr. Pevsner. N.J.S.A. 26:2H-2(m). N.J.S.A. 26:2H-12(a) mandates that all "health care facilities" be licensed and subject to inspection.
No health care facility shall be operated unless it shall: (1) possess a valid license issued pursuant to this act, which license shall specify the kind or kinds of health care services the facility is authorized to provide; (2) establish and maintain a uniform system of cost accounting approved by the commissioner; (3) establish and maintain a uniform system of reports and audits meeting the requirements of the commissioner; (4) prepare and review annually a long range plan for the provision of health care services; and (5) establish and maintain a centralized, coordinated system of discharge planning which assures every patient a planned program of continuing care and which meets the requirements of the commissioner which requirements shall, where feasible, equal or exceed those standards and regulations established by the federal government for all federally-funded health care facilities but shall not require any person who is not in receipt of state or federal assistance to be discharged against his will.
N.J.S.A. 26:2H-5(b). To effectuate the provisions of the Act the Commissioner of the State Department of Health has the power:
...to inquire into health care services and the operation of health care facilities and to conduct periodic inspections of such facilities with respect to fitness and adequacy of premises, equipment, personnel, rules and bylaws and the adequacy of financial resources and sources of future revenues.
To implement this grant of authority and carry out its concomitant responsibilities, the Act empowers the Department of Health to promulgate regulations. N.J.A.C. 8:43A-1.1 specifically subjects MRI facilities to the Department's regulatory scheme. Furthermore, the issuance by the Department of Health of a "certificate of need" does not in any way obviate the need to secure a license before commencing to render services to the public.

*737 Following the receipt of a certificate of need or a determination that a certificate of need is required, any person, organization, or corporation desiring to operate an ambulatory care facility shall make application to the Commissioner for a license on forms prescribed by the Department. N.J.A.C. 8:43A-2.2(a).
The above cited regulation specifically identifies MRI facilities as an "ambulatory care facility," requiring an application filing fee for a new license of $2,000 and $1,000 for renewal. A license must be renewed annually. Furthermore, this licensing process involves a great deal more than just simply filing a form and paying a fee.
All applicants must demonstrate that they have the capacity to operate an ambulatory care facility in accordance with the rules in this chapter. An application for a license may be denied if the applicant cannot demonstrate that the premises, equipment, personnel, including principals and management, finances, rules and bylaws, and standards of health care are fit and adequate and that there is reasonable assurance that the health care facility will be operated in accordance with the standards required by these rules. The Department may consider an applicant's prior history in operating a health care facility either in New Jersey or in other states in making this determination. Any evidence of licensure violations representing a serious risk of harm to patients may be considered by the Department, as well as any record of criminal convictions representing a risk of harm to the safety or welfare of patients. N.J.A.C. 8:43A-2.2(l)
The regulation also sets out a fee schedule for biennial inspections which the applicant is required to pay as a condition of licensure.
These specific licensing requirements are crystallized further by mandating that, prior to the initiation of any work, plans for the construction, expansion or renovation of MRI facilities be reviewed and approved by the Department. N.J.A.C. 8:43A-2.4. After the work is completed, the Department is required to inspect the site "to verify that the building has been constructed in accordance with the architectural plans approved by the Department." N.J.A.C. 8:43A-2.4(c). See also N.J.A.C. 8:43A-25.4; N.J.A.C. 8:43-25.5.
The Department also closely regulates the MRI facility's staffing levels. N.J.A.C. 8:43A-25.2 specifically provides that:
In addition to providing other staff as required by this chapter, a facility providing magnetic resonance imaging services shall have at least the following staff:
1. A medical director available who is a radiologist and whose primary responsibility during the last three years has been the interpretation of cross-sectional imaging for all body areas. (`Available' means capable of being reached);
2. One radiologist available during the facility's hours of operation and on the premises whenever a contrast medium is being used;
3. One full-time equivalent technician with documented training and experience in MRI service delivery and one other staff member, both of whom shall be on the premises during the facility's hours of operation; and
4. A radiation physicist/health physicist with documented training and experience in MRI techniques who shall be available.
Finally, as a further means of fulfilling its mission to provide a uniform and safe system of patient care, the Department requires that the MRI facility establish *738 and implement a written plan for a quality assurance program which must be reviewed at least annually and revised as necessary. The program must be directed by a "multidisciplinary committee [which] shall include at least representation from the medical staff, nursing staff and administration." N.J.A.C. 8:43A-18.1; N.J.A.C. 8:43A-18.2. See also N.J.A.C. 8:43A-25.3
As this analysis reveals, this comprehensive licensing scheme covers all aspects of the operations of a MRI facility, (1) the proposal phase; (2) construction and physical plant design; (3) equipment; (4) financial viability; (5) management structure; (6) professional and para-professional staffing levels; and (6) quality assurance for the actual delivery of services. Furthermore, the issuance of a license does not end the Department's oversight involvement. The regulations require periodic inspections to insure that patient care is not compromised.
Open MRI's unlicensed operations from September 1997 to June 1999 represent a flagrant violation of these statutory and regulatory requirements. Based on the evidence presented before this court, the entire operation was conducted without governmental oversight. From the configuration and construction of the physical plant to the equipment utilized to administer the MRI tests; from the make up of the on-site staff to the make up and structure of the management team; from financial resources to quality control; all this was done without regard for the legal standards set by the Legislature and State Department of Health. In short, this was a rogue operation, functioning completely outside the law.
A belief, even a good faith belief, that one is performing these services in a reasonable or otherwise sound manner is not a defense. As a matter of law, entities wishing to engage in a highly regulated business which directly impacts upon the safety and welfare of the public, such as the delivery of health care, are constructively on notice of the existence of legal requirements governing its practice and operations. Those who, nonetheless, venture forth without first obtaining the required governmental approvals, whether out of ignorance or arrogance, do so at their own risk and must face the legal consequences for their actions. Sound public policy can accept no lesser standard.
In this case, Open MRI's decision to operate this MRI facility without the required license was clearly the product of arrogance. Commissioner Fishman's August 27, 1997 letter made clear that the issuance of a Certificate of Need did not authorize Open MRI to commence operation without the required license. Indeed, the very fact that the shareholders of Open MRI applied for a Certificate Need is further evidence that they knew the legal process involved. Finally, Director Calabria's January 27, 1999 letter requesting information necessary for the Department to ascertain Open MRI's status was also ignored. Such clear contempt for the rule of law cannot find judicial countenance.
In Allstate Ins. v. Orthopedic Eva., 300 N.J.Super. 510, 693 A.2d 500 (App.Div. 1997), the court considered the question of whether defendant's failure to comply with the standards promulgated by the Board of Medical Examiners disqualified the services rendered from eligibility for PIP reimbursement. The defendant, a medical diagnostic testing facility, was not owned or under the responsibility of a licensed physician, as required by the regulations of the Board of Medical Examiners. In holding defendant ineligible for PIP reimbursement, the court articulated the applicable legal standard involved in the analysis:

*739 The law should accord no recognition to such activities and operations which place the public at risk by failing to provide the professional supervision and control deemed essential by the Board [of Medical Examiners]. A contrary result would tend to encourage nullification of the public policies underlying the regulation of health services. Id. at 517, 693 A.2d 500.
It is noteworthy that the court reached this conclusion despite not finding any evidence that patients evaluated by the defendant were mistreated. Id.
A-1) Decision by the Department of Health not to impose sanctions
Open MRI also argues before this court that the Department's April 19, 1999 New Jersey Register announcement not to impose monetary penalties on unlicensed MRI facilities should be construed as an administrative ratification of its own unlicensed operations. This argument is specious and lacks any foundation in law. As a starting point, as a creature of the Legislature, the Department's legal authority is exclusively statutory. New Jersey Department of Labor v. Pepsi-Cola, 170 N.J. 59, 784 A.2d 64 (2001); In Re Regulation F-22, Office of Milk Indus., 32 N.J. 258, 160 A.2d 627 (1960). Its power is limited to those expressly granted by statute or those fairly implied as necessary to carry out its assigned function. New Jersey Department of Labor, Supra. at 61, 784 A.2d 64. Nothing in the Health Care Facilities Act confers upon the Department the legal authority to ratify the unlicensed operations of MRI facilities by administrative fiat. In fact, in this respect, the language in the Act is clear in expressing the opposite conclusion. "No health care facility shall be operated unless it shall possess a valid license issued pursuant to this act..." N.J.S.A. 26:2H-12(a).
The Department's statutory authority to levy penalties is found in N.J.S.A. 26:2H-14.
Any person, firm, partnership, corporation or association who shall operate or conduct a health care facility without first obtaining the license required by this act... shall be liable to a penalty of not more than $1,000 as provided by regulation for each day of operation in violation hereof for the first offense and for any subsequent offense. (Emphasis added.)
In contrast to the injunctive language employed by the Legislature in the area of licensing, the penalty provisions reveals the legislative intent to confer a measure of discretion in the execution of this authority. This is do to the nature of the administrative agency's function in this respect. In determining whether monetary penalties are warranted the Commissioner or his designee is performing a quasi-judicial function. N.J.A.C. 8:43F-1.10. Like a court's determination of the appropriate sentence to impose in any given case, the Commissioner must consider mitigating and aggravating factors in fashioning a sanction which will serve the policy goals embodied in the Act. See State of New Jersey, Dept. of Health v. Wayside Retirement Center, 92 N.J.A.R.2d (HTL) 27 (1992). The phrase "not more than" sets a ceiling not a floor. The Commissioner's discretion is thus limited to a maximum of $1,000 per day. However, in his discretion, he is also authorized to conclude that no monetary sanction is warranted. N.J.A.C. 8:43E-3.1. Apparently, in the case of MRI facilities operating without a license prior to April 19, 1999, the Commissioner concluded that no sanction was warranted. However, the Commissioner's decision not to levy monetary penalties does not operate to repeal the licensing requirement imposed by the Legislature in N.J.S.A. 26:2H-12(a).
*740 Returning now to the PIP statute, since N.J.S.A. 39:6A-2 ( 1 ) defines the term "health care provider" to include radiology and diagnostic facilities licensed by the Department of Health and Senior Services, this court holds that Open MRI was not eligible to receive PIP reimbursement under N.J.S.A. 39:6A-5 for magnetic resonance imaging services performed on plaintiff's insureds during the period of time it operated without the required license.
B) New Jersey Insurance Fraud Prevention Act
Plaintiff argues that the claims submitted and the subsequent receipt of PIP reimbursement payments by Open MRI during the time it was not licensed by the Department of Health constitute a violation of the New Jersey Insurance Fraud Prevention Act (Insurance Fraud Act), N.J.S.A. 17:33A-1 to 30. Plaintiff seeks to be reimbursed for all payments made to Open MRI, treble damages and counsel fees. The Legislature has authorized private insurance companies damaged as a result of a violation of any provision of the Insurance Fraud Act to institute a civil action to recover compensatory damages, including reasonable investigation expenses, cost of suit and counsel fees. N.J.S.A. 17:33A-7(a). The statute also mandates treble damages "if the court determines that the defendant has engaged in a pattern of violating the act." N.J.S.A. 17:33A-7(b).
Under N.J.S.A. 17:33A-4(a)(1) a person or practitioner violates the Act if he:
Presents or causes to be presented any written or oral statement as part of, or in support to, a claim for payment or other benefit pursuant to an insurance policy...knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.
The record before this court is undisputed in several key areas: (1) Open MRI presented hundreds of written claims and received payments for magnetic resonance imaging services under the PIP provisions in the insurance policies issued by plaintiff; (2) Open MRI shareholders and directors knew that they were not licensed by the Department of Health to performed these services. However, Open MRI alleges that nothing in the written form utilized to support its claim for payment (HICF) contains any reference to its licensing status. Therefore, argues Open MRI, one of the essential elements of the offense, as defined by the statute, has not been proven. Open MRI is wrong.
The HICF requires the signature of the physician or "supplier" of the services, including listing the "degrees or credentials" of the signer. Webster's New Universal Unabridged Dictionary defines credentials as "evidence of authority, status, rights, entitlement to privileges, or the like, usually in written form." Therefore, by signing the HICF, Open MRI's representative was attesting to its licensing status, to its right or authority to perform these diagnostic services and received payment under the PIP provisions of the insured's automobile policy.
As to the issue of materiality, given this court's ruling that Open MRI was not eligible to receive PIP benefits during the time it was not licensed by the Department of Health, its knowing misrepresentation of its authority to receive these payments is directly material to plaintiff's decision to pay the PIP claims in question. In other words there is no doubt that had plaintiff been aware of Open MRI's non-license status it would not have paid the PIP claims.
*741 Therefore, this court holds that Open MRI's procurement and receipt of PIP payments at the time it knew was not eligible to receive such benefits, constitute a violation of the Insurance Fraud Act.

B-1) Measure of Damages
Turning now to the issue of damages, as previously noted, N.J.S.A. 17:33A-7(a) gives aggrieved insurance companies the right to recover compensatory damages. The question is: what is the measure of damages? Plaintiff argues for full restitution citing the policy goal in the Insurance Fraud Act.
The purpose of this act is to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims. N.J.S.A. 17:33A-2. (Emphasis added.)
Open MRI, on the other hand, argues that such award of damages would constitute a huge windfall to plaintiff, an outcome not contemplated by the Legislature nor authorized by the statute. Open MRI's position is not supported by either law or the public policy embodied in the Insurance Fraud Act.
The goal of compensatory damages is to restore the plaintiff to the same position it was in prior to the occurrence of the wrong. This is true whether the wrong inflicted lies in contract or tort. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984); Patusco v. Prince Macaroni Inc., 50 N.J. 365, 368, 235 A.2d 465 (1967); Maul v. Kirkman, 270 N.J.Super. 596, 617, 637 A.2d 928 (App.Div.1994). In this case, the wrong is statutory. The remedy has been prescribed by the Legislature.
The law presumes the Legislature's familiarity with the Common Law. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 94 A.2d 482 (1953); In the Matter of the Commitment of B.L.A., 2002 WL 393066 (App.Div.2002). In the use of the term "compensatory damages," as the remedy available to plaintiff, there is no indication that the Legislature intended any derogation from its Common Law usage. Aden v. Fortsh, 169 N.J. 64, 776 A.2d 792 (2001); Campione v. Adamar of New Jersey, Inc., 155 N.J. 245, 714 A.2d 299 (1998). In fact, the statute contains a section devoted exclusively to the definition of terms. N.J.S.A. 17:33A-3. Conspicuously absent from this statutory glossary is the term "compensatory damages," although such otherwise ordinary words as "pattern, insurance company, statement, and hospital" are defined. This court holds that an award of compensatory damages requires the full restoration or "restitution" to plaintiff of all payments made to Open MRI during the relevant time period.[3]
This holding is also consistent with the expressed public policy purpose of the statute, "the restitution of fraudulently obtained insurance benefits." N.J.S.A. 17:33A-2. As noted by Justice Garibaldi in Merin v. Maglaki, 126 N.J. 430, 436, 599 A.2d 1256 (1992) (citing State v. Tischio, 107 N.J. 504, 511, 527 A.2d 388, appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988)) "In discerning [the intent of the Legislature] we consider not only the particular statute in *742 question, but also the entire legislative scheme of which it is a part." This measure of damages would put plaintiff back in the position it was in prior to the payment of Open MRI's fraudulent claims, an outcome clearly consistent with the entire thrust of the Insurance Fraud Act.
The final issue to be addressed is plaintiff's application for treble damages. N.J.S.A. 17:33A-7(b) provides that:
A successful claimant under sub-section (a) shall recover treble damages if the court determines that the defendant has engaged in pattern of violating this act.
N.J.S.A. 17:33A-3 defines "pattern" as "five or more related violations [of the Act]. Violations are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner charged with violating [the Act]."
In this light, there is no question that plaintiff is entitled to treble damages. At the risk of belaboring the obvious, Open MRI's fraudulent claims and receipt of insurance payments all involved the same victim, plaintiff NCIC. During the relevant time period, September 1997 to June 1999, Open MRI submitted hundreds of claims and received thousands of dollars from the plaintiff as payment for these claims.
The exact amount of monetary damages is beyond the scope of this decision. However, armed with this ruling, plaintiff is entitled to present competent proof of the precise amount of damages involved for future adjudication.

CONCLUSION AND RECAPITULATION
This court holds that Open MRI was not eligible to receive PIP reimbursement under N.J.S.A. 39:6A-5 for magnetic resonance imaging services performed on plaintiff's insureds during the period of time it operated without the required license from the State Department of Health and Senior Services. Open MRI's procurement and receipt of PIP payments at the time it knew it was not eligible to receive such benefits constitute a violation of the New Jersey Insurance Fraud Prevention Act. Pursuant to N.J.S.A. 17:33A-7(a) Open MRI is liable to plaintiff for compensatory damages which include the full restitution of any payments received from plaintiff during the time it was not licensed by the State Department of Health and Senior Services and reasonable investigation expenses, cost of suit and attorneys fees. Open MRI is also liable for treble damages pursuant to N.J.S.A. 17:33A-7(b). Plaintiff's motion for summary judgment is granted. Defendant Open MRI's cross-motion for summary judgment is denied.
NOTES
[1] On December 2, 1997, a Certificate of Amendment was filed with the Secretary of State changing the name to Open MRI of Fairview. The Amended Certificate states that the name change was approved by the Board of Directors on November 17, 1997. No other changes are shown.
[2] This certification, dated May 24, 2001, is the same certification submitted by Open MRI when it unsuccessfully opposed plaintiff's previous motion for summary judgment as to claims for payment submitted but not paid.
[3] N.J.S.A. 17:33A-(c) also empowers the Commissioner of Banking and Insurance to order restitution to any insurance company or other person who has suffered a loss as a result of a violation of the Act.