966 A.2d 48 (2009)
405 N.J. Super. 576
OPEN MRI OF MORRIS & ESSEX, L.P., MRI Management Group, LLC, Fiorenza/Weisberg Equities, Inc., Dominick Fiorenza, Mark Weisberg, Eddy Fischgrund and Mark Cammarota, Plaintiffs-Respondents,
v.
John R. FRIERI, Frieri & Conroy, LLC, Defendants-Respondents.
State Farm Indemnity Company, Plaintiff, and
State of New Jersey, Office of the Insurance Fraud Prosecutor, Intervenor/Plaintiff-Appellant,
v.
Open MRI of Morris & Essex, L.P., Defendant-Respondent.
New Jersey Manufacturers Insurance Company, Plaintiff, and
State of New Jersey, Office of the Insurance Fraud Prosecutor, Intervenor/Plaintiff-Appellant,
v.
Open MRI of Morris & Essex, L.P., Defendant-Respondent.
No. A-4689-07T2.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 2008.
Decided March 11, 2009.
*50 John C. Grady, Deputy Attorney General, argued the cause for appellant State of New Jersey, Office of the Insurance Fraud Prosecutor (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Barbara C. Zimmerman, Deputy Attorney General, and Mr. Grady, on the briefs).
Ethan Jesse Sheffet, Springfield, argued the cause for respondents Open MRI of Morris & Essex, L.P., MRI Management Group, LLC, and Eddy Fischgrund (Sheffet & Dvorin, attorneys; Mr. Sheffet, on the joint brief).
John B. Collins, Denville, argued the cause for respondent Dominick Fiorenza (Bongiovanni, Collins & Warden, attorneys; Mr. Collins, of counsel and on the joint brief).
Christopher J. Carey, Morristown, argued the cause for respondents John R. Frieri and Frieri & Conroy, LLC (Graham Curtin, attorneys; Mr. Carey, of counsel; Patrick J. Galligan and Loren L. Speziale, on the brief).
Before Judges WEFING, YANNOTTI and LeWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Pursuant to leave granted, the State of New Jersey Office of the Insurance Fraud Prosecutor ("OIFP") appeals from a trial court order denying its motion for summary judgment. After reviewing the record in light of the contentions advanced on appeal, we affirm in part, reverse in part, and remand for further proceedings.
The matter has a complex factual background which must be set forth for a complete analysis of the questions presented. Defendant Dominick Fiorenza is an accountant and defendant Mark Cammarota was a client of his. Cammarota suggested to Fiorenza that they go into business and establish a facility dedicated to performing magnetic resonance imaging ("MRI") tests. Cammarota told Fiorenza that there was a strong need for such facilities, the cost of operation was relatively low, and the rate of reimbursement by insurance carriers was high. Fiorenza was intrigued and talked to defendant Eddy Fischgrund about the idea. Fiorenza and Fischgrund, a chiropractor, then talked with equipment vendors to explore the matter. One of the salesmen told them that all they needed to do was find an appropriate location and obtain a certificate of need from the Department of Health and Senior Services. They inquired whether he knew of anyone with a background in running such a facility and they were referred to Ray Carolonza. The three men decided to place Carolonza in charge of the administrative functions of the business.[1]
*51 In addition, they met with defendant John R. Frieri, Esq., who assured them that he was an expert in healthcare law and medical billing. They retained Frieri to handle the legal issues in connection with opening an MRI facility.
Fiorenza, Fischgrund and Cammarota organized themselves into a limited liability company, plaintiff MRI Management ("Management"). In addition, a partnership, plaintiff Open MRI of Morris & Essex ("Open"), was created to own and operate the proposed facility. Management was the general partner of Open. Additional individuals were admitted as limited partners to Open to provide the necessary capitalization for the business.
In March 1997, Open filed an application with the Department of Health and Senior Services for a certificate of need for a proposed MRI facility to be located on Route 10 in East Hanover. On May 6, 1997, the then-Commissioner wrote a letter addressed to Ray Carolonza, as the chief operating officer of Open, with a copy to defendant Fiorenza, at Fiorenza's business address.
The letter itself was a detailed, two-page single-spaced letter. The first paragraph read,
Congratulations! I am pleased to inform you that I am approving Open MRI of Morris & Essex, L.P.'s certificate of need application, submitted pursuant to N.J.A.C. 8:33-5.1, for the establishment of a magnetic resonance imaging/nuclear magnetic resonance (MRI) service to be located in East Hanover, New Jersey.
Fischgrund and Fiorenza testified in their depositions that they never read anything in the letter past that first paragraph. Thus they stated that they never read the last sentence in the next-to-last paragraph in the letter which stated:
Finally, please be advised that services may not commence until such time as a license has been issued by the Certificate of Need and Acute Care Licensure Program.
Shortly after receipt of the letter of May 6, 1997, Open commenced operating its facility and submitting claims to health insurers for reimbursement for its services. These claims were paid in the ordinary course until it came to light that Open had not received the required license from the Department of Health and Senior Services.
In July 1998, Cammarota, on behalf of Open, inquired of the Department as to the procedures and requirements for obtaining the necessary license. The Department responded by letter dated July 2, 1998, explaining the process and enclosing an application form. The letter stated:
You may not proceed with initiation of the service until you have received occupancy approval from the Certificate of Need and Acute Care Licensing [sic] Program.
By the time of that letter, Open had been providing services for more than one year.
It did not cease operations, however, because doing so was not considered economically viable. Neither did it immediately submit an application for a license.
In April 1999, the Department of Health and Senior Services published a notice in the New Jersey Register stating that MRI facilities operating without a license would not be subject to administrative penalties if they submitted an application for a license on or before September 1, 1999, and a license was issued on or before December 31, 1999. The parties refer to this as the "amnesty provision." The December 31 deadline was later extended to May 1, 2000. In November 1999, more than one year after being advised how to obtain a license, and more than two years after commencing operations, Open finally submitted *52 a license application to the Department. The Department issued a license to Open in January 2000, nearly three years after it started providing MRI services and submitting claim forms to insurers.
In November 2003, plaintiffs filed a legal malpractice action against Frieri, contending he was negligent in not having advised plaintiffs of the necessity of obtaining a license before commencing operations. In September 2004, State Farm Indemnity Company filed suit against Open, seeking, inter alia, return of the more than $900,000 that State Farm had paid to Open during the period that Open was not licensed to provide MRI services. That action was consolidated with the pending legal malpractice action.
In September 2005, New Jersey Manufacturers Insurance Company filed a similar suit against Open, seeking return of the $240,000 it had paid to Open during the period that Open was not licensed to provide MRI services. That action was also consolidated with the pending malpractice and State Farm suit.
Finally, OIFP was granted leave to intervene in this action, contending that the actions of Open constituted violations of New Jersey's Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30, subjecting the participants to the penalty provisions of that statute.
OIFP later moved for summary judgment. It contended that each of the health insurance claim forms that Open had submitted to the insurers constituted a statutory violation and that Open was liable for civil penalties in excess of $500,000.
The trial court denied OIFP's motion. It noted that under N.J.S.A. 17:33A-4(a)(1), it is a violation of the statute to present a statement in support of a request for payment "knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." The trial court concluded that there were material questions of fact with respect to the extent to which there had been a knowing violation of the statute. We granted OIFP's motion for leave to appeal from the order entered by the trial court.
The Insurance Fraud Prevention Act was enacted to combat insurance fraud in the state of New Jersey. N.J.S.A. 17:33A-2. It prohibits behavior leading to the submission of a false claim under an insurance policy. Those who violate the statute are subject to an administrative penalty, which cannot exceed $5,000 for the first violation, $10,000 for the second violation, and $15,000 for each subsequent violation. N.J.S.A. 17:33A-5. Each submission of a claim form seeking reimbursement to which a health care provider knows it is not entitled is deemed a separate offense. Allstate Ins. Co. v. Greenberg, 376 N.J.Super. 623, 638, 871 A.2d 171 (Law Div.2004).
Proof of fraud under the Insurance Fraud Prevention Act, as opposed to common law fraud, does not require proof of reliance on the false statement or resultant damages. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 174-75, 892 A.2d 1240 (2006). Nor does it require proof of an intent to deceive. State v. Nasir, 355 N.J.Super. 96, 106, 809 A.2d 796 (App.Div.2002), certif. denied, 175 N.J. 549, 816 A.2d 1051 (2003).
An analogous case arose before the Law Division, Material Damage Adj. Corp. v. Open MRI of Fairview, 352 N.J.Super. 216, 799 A.2d 731 (Law Div.2002). The defendant in that case operated an MRI facility in Fairview for nearly two years without having received a license from the Department of Health and Senior Services.[2] *53 The plaintiff, a licensed automobile insurance carrier, sought reimbursement for the sums it had paid as PIP benefits after receiving health insurance claim forms from the defendant. It also sought treble damages and counsel fees under the Insurance Fraud Prevention Act. The trial court found for the plaintiff, awarding it the entire relief it sought. The trial court concluded that the execution of the completed claim form, which called for "the signature of the physician or `supplier' ... including listing the `degrees or credentials' of the signer" constituted a knowing representation that the facility was duly licensed. Id. at 230-31, 799 A.2d 731.
We need not go so far in the present matter, at least insofar as Open is concerned. The record is undisputed that Open was advised twice, in May of 1997 and again in July of 1998, that it could not perform MRI services without having obtained a license. It is immaterial whether Fiorenza or Fischgrund read the entirety of the letter of May 1997. The letter constituted notice to Open that it had to obtain a license before proceeding, and Open is chargeable with that notice. By July 1998, moreover, it is indisputable that Open knew that it required a license to operate. It chose, however, to continue performing MRI services solely for economic reasons.
In addition to the clear advice from the Department on two separate occasions that Open had to obtain a license before it could commence operations, Open was chargeable with notice of the license requirement.
A belief, even a good faith belief, that one is performing these services in a reasonable or otherwise sound manner is not a defense. As a matter of law, entities wishing to engage in a highly regulated business which directly impacts upon the safety and welfare of the public, such as the delivery of health care, are constructively on notice of the existence of legal requirements governing its practice and operations. Those who, nonetheless, venture forth without first obtaining the required governmental approvals, whether out of ignorance or arrogance, do so at their own risk and must face the legal consequences for their actions. Sound public policy can accept no lesser standard.
[Id. at 227, 799 A.2d 731.]
Open urges, nonetheless, that it is shielded from liability under the Insurance Fraud Prevention Act by the amnesty provision to which we referred earlier. The trial court found there was a question of fact with respect to this contention. We disagree; in our judgment, it is a question of law and can properly be resolved on this record. We conclude that the Commissioner's amnesty provision does not provide a safe harbor for Open.
We note, for the sake of completeness, that Open has already argued unsuccessfully in another context that the effect of the amnesty provision was to grant a retroactive validation of its actions. Liberty Mut. Ins. Co. v. Open MRI of Morris & Essex, L.P., 356 N.J.Super. 567, 571, 813 A.2d 621 (Law Div.2002) (setting aside a PIP arbitration award in favor of Open for services performed prior to the issuance of its license). We do not rest our determination on principles of collateral estoppel, however.
The Commissioner's notice in the New Jersey Register referred to the penalties *54 assessed for operating a health care facility without a license. These are penalties assessed by the Commissioner pursuant to N.J.S.A. 26:2H-14.
The administrative penalties in question here are assessed by the OIFP, pursuant to an entirely different statute. The Commissioner of Health and Senior Services had no jurisdiction or authority to suspend penalties imposed for committing insurance fraud. The OIFP was entitled to summary judgment striking the defense of the amnesty provision.
In our judgment, having reviewed this record, there can be no serious question of fact as to Open's knowledge and liability under the Insurance Fraud Prevention Act. OIFP's motion for summary judgment should have been granted with respect to Open's liability for administrative penalties under the Insurance Fraud Prevention Act.
OIFP's motion, however, sought penalties in excess of $500,000, using the formula contained in N.J.S.A. 17:33A-5, set forth earlier in this opinion. That statute, however, sets forth the maximum penalties that may be assessed; it is a ceiling not a floor. Liberty Mut., supra, 356 N.J.Super. at 572, 813 A.2d 621. That OIFP may have been entitled to summary judgment with respect to Open's liability under the statute does not mean that it was similarly entitled to summary judgment on the amount of the penalties to be assessed.
In addition, we agree with the trial court with respect to the potential liability of the individual participants in Open and Management. The Insurance Fraud Prevention Act imposes penalties upon those who knowingly violate its terms. We are compelled to review this record in light of the standards enunciated in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), that is, we are required to view the facts and inferences most favorably to those against whom OIFP sought summary judgment. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
Viewed from this perspective, we agree with the trial court that the matter of the individual participants' liability was not ripe for summary judgment. Resolution of the liability of these participants will also require consideration of principles of partnership law and the statute governing limited liability companies, N.J.S.A. 42:2B-1 to -70.
The order under review is thus affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings.
NOTES
[1] Carolonza was terminated several months after the subject facility opened. Fiorenza testified he terminated Carolonza after learning he was siphoning patients to a competing facility in which he had an ownership interest. Carolonza was not named a defendant in this case.
[2] We note that the defendant's certificate of incorporation in that matter listed Ray Carolonza as a director. Id. at 220, 799 A.2d 731.