737 A.2d 711 (1999)
325 N.J. Super. 54
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Plaintiff,
v.
MIDLANTIC MOTION X-RAY, INC., Defendant.
Superior Court of New Jersey, Law Division, Morris County.
Decided January 22, 1999.
Jacob A. Papay, Jr., Clinton, for plaintiff (Gebhardt & Kiefer, P.C., attorneys; Mr. Papay, on the brief).
Lawrence S. Caniglia, Moorestown, for defendant (McInerney & Caniglia, attorneys; Mr. Caniglia, on the brief).
VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).
This is a declaratory judgment action in which the plaintiff, Prudential Property & Casualty Insurance Company, seeks a declaration that defendant, Midlantic Motion *712 X-Ray's diagnostic services are ineligible for Personal Injury Protection ("PIP") benefits under N.J.S.A. 39:6A-2 because defendant is operating in violation of N.J.A.C. 13:35-2.5 to -2.14, as its facility is not owned or controlled by a physician holding a plenary license issued by the State of New Jersey.
Plaintiff is a New Jersey corporation authorized to transact insurance business within the State of New Jersey which issues private passenger automobile insurance policies that provide PIP benefits pursuant to N.J.S.A. 39:6A-4. Plaintiff, as a PIP carrier, is required to pay only reasonable and necessary medical expenses for medical services. Payment is limited to those medical services that are rendered for the treatment or diagnosis of injuries sustained in a qualifying automobile accident by its insureds (and others designated in the policies).
Pursuant to N.J.S.A. 39:6A-2e:
"Medical Expenses" means expenses for medical treatment, surgical treatment, dental treatment, professional nursing services, hospital expenses, rehabilitation services, X-ray and other diagnostic services, prosthetic devices, ambulance services, medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery pursuant to R.S. 45:9-1 et seq., dentistry pursuant to R.S. 45:6-1 et seq., psychology pursuant to P.L.1966, c. 282 (C.45:14B-1 et seq.) or chiropractic pursuant to P.L.1953, c. 233 (C.45:9-41.1 et seq.) or by persons similarly licensed in other states and nations or any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing.
In the present case, defendant, Midlantic Motion X-Ray, Inc., at all relevant times has been owned solely by Thomas Campana, D.C. Dr. Campana is a chiropractor licensed by the State of New Jersey; however, he is not a medical doctor nor an osteopathic doctor. As such, Dr. Campana is not a physician holding a plenary license issued by the New Jersey State Board of Medical Examiners.
In other words, a chiropractor is a limited health care licensee as opposed to an M.D. or a D.O. whose license is plenary or unrestricted in nature. This distinction is noted in N.J.A.C. 13:35-6.16 which prohibits a plenary licensee, such as an M.D. or D.O., from being employed by a limited licensee, such as a podiatrist or chiropractor.
Defendant, Midlantic Motion X-ray, Inc., is a professional corporation that provides mobile diagnostic X-ray testing services, including but not limited to video fluoroscopy and/or cineradiography. At the request of referring chiropractors or other physicians, the defendant provides its services to patients who are not receiving treatment from the defendant or Dr. Campana.
Unless a patient has received treatment from the defendant or Dr. Campana prior to the performance of a video fluoroscopy and/or cineradiography test, neither the defendant nor Dr. Campana will perform a physical examination of that patient. Further, there is no radiologist present during the performance of the video fluoroscopy and/or cineradiography testing performed by defendant. From January 1998 to date, the video fluoroscopy and/or cineradiography tests performed by defendant are not interpreted by a physician holding a plenary license issued by the State of New Jersey.
There is no competent evidence, as required by R. 1:6-6, disputing these facts. See also Housel v. Theodoridis, 314 N.J.Super. 597, 604, 715 A.2d 1025 (App. Div.1998).
In any event, the defendant sought payment from the plaintiff for medical services rendered to patients who were allegedly eligible to receive medical expense benefits under the PIP endorsement of private passenger automobile insurance policies issued by the plaintiff. The bills *713 submitted by defendant were either by way of an attending physician's report or health insurance claim form.
Plaintiff found the defendant ineligible for PIP reimbursement and denied its claims because of violations of the State Board of Medical Examiners' Regulations, the services rendered lacked clinical utility and were not medically reasonable or necessary, and the bills submitted were unbundled and were otherwise excessive and unreasonable.

I.
As plaintiff's expert, Charles A. Bender, D.C. observes, the introduction to defendant's promotional literature reads as follows: "Midlantic Motion X-Rays, a medical diagnostic analysis group, includes a professional group of physicians...." [Emphasis added]. Accordingly, Dr. Bender properly notes:
This statement places the company squarely under the authority of the Board of Medical Examiners. Specifically, the regulations of the BME dealing with these matters are found at N.J.A.C. 13:35-2.5, [m]edical standards governing screening and diagnostic medical testing offices.
N.J.A.C. 13:35-2.5(b) states:
Medical screening or medical diagnostic testing (other than clinical laboratory testing), conducted primarily for persons not receiving medical treatment from the testing entity, is nevertheless deemed to be a medical service. Such a practice shall be owned and under the responsibility of one or more physicians each of whom holds a plenary license from the State Board of Medical Examiners. All such testing, irrespective of the stationary or mobile nature of the facility, shall be performed under the authority of a designated responsible physician who shall establish a protocol and a quality assurance program for the specific type of screening or study. Results of all such procedures shall be interpreted by a physician holding a plenary license in this State, and documented in a written report which is preserved by the physician as required by N.J.A.C. 13:35-6.5.
Defendant provides a medical service; however, the results are interpreted by a plenary licensee only. Hence, the owner of the defendant is not a plenary licensed physician and the protocols are not established by a plenary licensed physician.
In addition, N.J.A.C. 13:35-2.5(d) requires: "Services performed from mobile facilities parked on the premises of or providing services to a licensed health care facility must have approval from the State Department of Health." Defendant has failed to produce any evidence of approval from the State Department of Health.
Another Board of Medical Examiners' rule provides further requirements for eligible radiological services:
A physician may request a radiologist to perform diagnostic radiology services intended to confirm or rule out suspected pathology. The radiologist shall ascertain whether sufficient objective or clinical data have been provided to determine that the tests are appropriate to the apparent problem. When, in the opinion of a reasonable radiologist, further information is needed to select the appropriate test, then the radiologist, whenever feasible, shall personally consult with the referring doctor in advance of performing the test. In addition or as an alternative, at the professional discretion of the radiologist, he or she shall perform a focused clinical examination in appropriate cases. Whenever feasible, the radiologist shall be notified of the patient's appearance at the radiologic facility and shall direct the licensed x-ray technologist as to procedure, method of obtaining the test data ... and timely notification to the patient or referring physician of results or the need to repeat the test.

[N.J.A.C. 13:35-2.5(h) ]. *714 Here, the defendant's form "How to Process a New Patient" does not comply with the requirements of subsection (h). It appears that defendant's common practice is to simply respond to a physician's request by sending a radiological technician to an office location and a performing a cervical study. Then, the results from the study are forwarded to the plenary licensee to be interpreted.

II.
The court in Allstate Ins. v. Orthopedic Evaluations, Inc., 304 N.J.Super. 278, 700 A.2d 372 (App.Div.1997), held that the State had enacted standards governing the operation of diagnostic facilities and that to be eligible for PIP reimbursement the requirement of N.J.A.C. 13:35-2.5(b) had to be satisfied. Id. at 280, 700 A.2d 372. The court found the facility to be a "medical diagnostic testing service" subject to the requirements of N.J.A.C. 13:35-2.5(b). Ibid.
Defendant herein is a medical diagnostic testing service which is mobile that travels to practitioners' offices on request. Defendant does not render any medical treatment; instead, it merely performs videofluoroscopy and/or cineradiography. Moreover, defendant does not treat any of the patients it tests unless they are its or Dr. Campana's patients. Dr. Campana is the sole physician or chiropractor who interprets defendant's videofluoroscopy films.
Therefore, as was the case in Orthopedic Evaluations, Inc., defendant is by definition a medical diagnostic testing service subject to N.J.A.C. 13:35-2.5(b).

III.
The Supreme Court in Thermographic Diagnostics v. Allstate established the following standard for complying with N.J.S.A. 39:6A-2e to ascertain whether or not the subject testing qualified as a necessary medical expense:
{A} necessary medical expense under the Act is one incurred for a treatment, procedure, or service ordered by a qualified physician based on the physician's objectively reasonable belief that it will further the patient's diagnosis and treatment. The use of the treatment, procedure, or service must be warranted by the circumstances and its medical value must be verified by credible and reliable evidence.
[125 N.J. 491, 512, 593 A.2d 768 (1991).]
As articulated by the Supreme Court, the Act would allow for "reimbursement for innovative medical procedures warranted by the circumstances that have demonstrable medical value but have not yet attained general acceptance by a majority of the relevant medical community." Ibid. [Emphasis added]. The Supreme Court held that thermographic testing was compensable because there was a scientific basis evidencing uniform and reasonably reliable results which assisted in the diagnosis of certain neurological and musculoskeletal conditions. Id. at 513, 593 A.2d 768.
N.J.A.C. 13:35-2.5(b) not only requires that a diagnostic facility be "owned and under the responsibility of one or more physicians each of whom holds a plenary license from the State Board of Medical Examiners," but it also requires that "the [r]esults of all such procedures shall be interpreted by a physician holding a plenary license." [Emphasis added]. The failure of a provider or service to adhere to the aforementioned regulation, or any other significant state statute or agency regulation, renders that provider or service ineligible for reimbursement under the No Fault Act. Allstate v. Orthopedic Evaluations, Inc., 300 N.J.Super. 510, 516, 693 A.2d 500 (App.Div.), certif. granted, 151 N.J. 67, 697 A.2d 541, affirmed on remand, 304 N.J.Super. 278, 700 A.2d 372 (App.Div.1997). Defendant has failed to comply with these regulations.
*715 In the present case, defendant is owned exclusively by Dr. Campana, who holds a limited license under the State Board of Chiropractic Examiners. Based upon N.J.A.C. 13:35-2.5(b), the defendant with Thomas Campana, D.C. as sole owner is in violation of State law by operating a diagnostic facility without the proper and necessary plenary license. Moreover, the diagnostic services rendered by the defendant do not qualify for PIP reimbursement because defendant failed to provide proper ownership, control and supervision of the facility by an individual with a plenary license deemed essential by the State Board of Medical Examiners.
This court does not find it necessary to determine the plaintiff's other arguments such as the defendant's claim to be providing video fluoroscopy whereas plaintiff alleges that the defendant is performing cineradiography[1] and the fees charged are excessive.
Summary judgment is entered in favor of the plaintiff declaring that the defendant's services are ineligible for PIP reimbursement because it is operating in violation of N.J.A.C. 13:35-2.5 to -2.14.
NOTES
[1] The two procedures are different and there are separate AMA CPT-4 Codes to describe the procedures. Video fluoroscopy is generally done intra operatively whereas cineradiography is simply motion x-rays. In fact, the defendant uses the code for cineradiography when billing its procedures.