871 A.2d 171 (2004)
376 N.J. Super. 623
ALLSTATE INSURANCE COMPANY, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Continental Insurance Company and Commercial Insurance of Newark, N.J., Plaintiffs,
v.
Scott GREENBERG, D.C., Access Chiropractic Associates, P.C., Apex Chiropractic Associates, P.C., Chambersberg Chiropractic Associates, P.C., Easton Chiropractic Associates, Inc., Pace Chiropractic Associates, Inc., Middlesex Diagnostic Associates, P.A., Accurate Billing Company, Inc., Neuro Muscular Medical Group, P.A., Roman Sorin, M.D., Brunswick Imaging Corporation, Steven Brownstein, M.D., Donald Cioffi, D.C., Norman Brettler, Defendants.
Superior Court of New Jersey, Law Division, Morris County.
Decided December 10, 2004.
*173 Richard Vuernick and Daniel S. Hunczak, for plaintiffs (Pringle Quinn Anzano, P.C., attorneys).
William D. Levinson, Edison, for defendants Scott Greenberg, D.C., Access Chiropractic Associates, P.C., Apex Chiropractic Associates, P.C., Chambersberg Chiropractic Associates, P.C., Easton Chiropractic Associates, Inc., Pace Chiropractic Associates, Inc., Middlesex Diagnostic Associates, P.A., Accurate Billing Company, Inc. (Eichen Levinson, L.L.P., attorneys).
VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).
In this motion for partial summary judgment, plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Continental Insurance Company and Commercial Insurance Company of Newark, N.J. ("plaintiffs") seek relief from defendants Scott Greenberg, D.C., Access Chiropractic Associates, P.C., Chambersberg Chiropractic Associates, P.C., Easton Chiropractic Associates, Inc., Pace Chiropractic Associates, Inc., Middlesex Diagnostic Associates, P.A., Accurate Billing Company, Inc. ("the Greenberg defendants") to have defendants disgorge all payments made to them by the plaintiffs and to recover compensatory and treble damages for violating the New Jersey Insurance Fraud Prevention Act (the "Fraud Act"), *174 space N.J.S.A. 17:33A-1 to -30. Plaintiffs contend that defendant Greenberg's ownership of defendant Middlesex Diagnostic Associates, P.A. violated N.J.A.C. 13:35-2.5(b) and constituted an unlawful self-referral in violation of N.J.S.A. 45:9-22.5 and N.J.A.C. 13:44E-2.7; and that Dr. Greenberg, a chiropractor, employed defendant, Roman Sorin, M.D., a plenary licensed physician in violation of N.J.A.C. 13:35-6.16(f)(3)(i).

I.
Dr. Greenberg admitted that he was a doctor of chiropractic licensed to practice in the State of New Jersey, and he incorporated and solely owned all the aforesaid chiropractic facilities. He also admitted that he was the sole owner and shareholder of defendant Middlesex Diagnostic while it was in existence and performed diagnostic testing. Dr. Greenberg has testified that Middlesex Diagnostic did not receive referrals from any medical providers other than the Greenberg chiropractic facilities. Dr. Greenberg has denied that he personally made any referral from his chiropractic facilities to Middlesex Diagnostic.
The plaintiffs' exhibits included documents related to treatment of various patients of Dr. Greenberg's chiropractic facilities and Middlesex Diagnostic which included the referral forms from the specific chiropractic facility to Middlesex Diagnostic and Health Insurance claims forms for the applicable dates of service at both the chiropractic facility and Middlesex Diagnostic.
In the unrebutted certification of Benjamin J. Hickey, an analyst in the Special Investigation Unit of Allstate Insurance Company, he certified "upon further review of Allstate's records, it appears that two separate entities, with separate taxpayer identification numbers ("T.I.N."), submitted bills to Allstate based upon referrals from the Greenberg chiropractic facilities."
He further stated that during the period of July 31, 1996 to February 20, 2000, Allstate received 505 claims for payment from Middlesex Diagnostic with a T.I.N. of XX-XXXXXXX. Of these 505 claimants, the following number of claimants were also seen by a provider employed by one of the Greenberg chiropractic facilities:
Access = 150 claimants; paid amount of $8,107.70
Apex = 120 claimants; paid amount of $6,117,74
Chambersberg = 58 claimants; paid amount of $761
Easton = 133 claimants; paid amount of $7,129.38
Pace = 44 claimants; paid amount of $1,107.55
The amount paid to Middlesex Diagnostic on these 505 claims was $23,223.37.
During the period October 25, 1995 to November 29, 1999, Allstate received 360 claims for payment from Middlesex Diagnostic with a T.I.N. of XX-XXXXXXX. Of these 360 claimants, the following number of claimants were also seen by a provider employed by one of the Greenberg chiropractic facilities:
Access = 81 claimants; paid amount of $18,098.84
Apex = 101 claimants; paid amount of $22,610.04
Chambersberg = 34 claimants; paid amount of $7,795.26
Easton = 54 claimants; paid amount of $14,355.34
Pace = 90 claimants; paid amount of $25,521.26
The amount paid to Middlesex Diagnostic on these 360 claims was $88,380.74.
*175 The total amount Allstate paid to Middlesex Diagnostic based upon a referral from a Greenberg chiropractic facility is $111,604.11, which amount has not been disputed. See R. 4:46-5(a). Greenberg has failed to examine the checks involved even though he apparently has 1099 forms for each payment and has not disputed one payment.

II.
Plaintiffs Allstate contend that Scott Greenberg, D.C., a non-plenary licensed physician, owned a diagnostic facility in violation of N.J.A.C. 13:35-2.5(b) and employed a plenary physician in violation of N.J.A.C. 13:35-6.16. The regulations set forth the criteria required of a "medical screening or medical diagnostic testing facility" which are described in N.J.A.C. 13:35-2.5(b):
Medical screening or medical diagnostic testing (other than clinical laboratory testing), conducted primarily for persons not receiving medical treatment from the testing entity, is nevertheless deemed to be a medical service. Such a practice shall be owned and under the responsibility of one or more physicians each of whom holds a plenary license from the State Board of Medical Examiners. All such testing, irrespective of the stationary or mobile nature of the facility, shall be performed under the authority of a designated responsible physician who shall establish a protocol and a quality assurance program for the specific type of screening or study. Results of all such procedures shall be interpreted by a physician holding a plenary license in this State, and documented in a written report which is preserved by the physician as required by N.J.A.C. 13:35-6.5. (Emphasis added.)[1]
Thus, it is clear the regulations specify that only a plenary licensed physician may own a diagnostic facility, whether it is mobile or stationary. Therefore, any bills Middlesex Diagnostic submitted were in violation of N.J.A.C. 13:35-2.5, and not reimbursable.
Plaintiffs also contend that Greenberg employed a plenary licensed physician, Roman Sorin, M.D., whose license exceeds his own, in violation of N.J.A.C. 13:35-6.16(f)(3)(i), creating an improper employment relationship.
Plaintiffs further contend that Greenberg has a significant beneficial interest in Middlesex Diagnostic Associates, P.A., because the Greenberg chiropractic facilities referred claimants to Middlesex Diagnostic, an entity wholly owned by Greenberg, making these referrals "self-referrals" in violation of N.J.S.A. 45:9-22.5 and N.J.A.C. 13:44E-2.6. Middlesex Diagnostic had no other patients than those referred from Greenberg's chiropractic facilities.

III.
Dr. Greenberg contends that he did not violate any statute or regulation and that he never employed Dr. Roman Sorin. Dr. Greenberg further asserts that he never owned a diagnostic facility nor submitted bills for medical interpretations and did not knowingly violate the Fraud Act. He further claims that Middlesex Diagnostic never operated as a mobile diagnostic facility and, upon advice from his accountant and lawyer, entered "in Middlesex Diagnostic with the understanding that he was complying with all applicable regulations." Although these contentions, even if true, *176 may give rise to a third-party action, there is no competent evidence in the record to support this alleged advice. See R. 1:6-6 and R. 4:46-5(a).
Greenberg now contends that form should not prevail over substance because he did not have to incorporate Middlesex Diagnostic Associates, P.A., but could have legally performed the same functions in his own office. The many fallacies with this assertion are:
1. He did not operate a diagnostic clinic as part of his practice nor was he qualified to do so.
2. He is not a medical doctor and therefore could not have "owned" or "supervised" the testing that Middlesex Diagnostic performed.
3. His intricate scheme to create five chiropractic clinics which referred all the patients of Middlesex Diagnostic and also created a separate billing company that charged 30% is not an unsophisticated enterprise consisting of seven corporations. It was obviously designed to maximize profits  particularly with reference to Middlesex Diagnostic.
4. The failure of Middlesex Diagnostic to list its street address anywhere in its claim forms or before this court was a violation of N.J.A.C. 13:35-6.1(f) which states:
All professional representations, including, but not limited to, letterhead stationery, business cards and claim forms, shall identify the street address(es) of the licensee's professional practice location(s). A post office box, whether for general mailing or for billing purposes, may be listed on the professional representation as a preferred mailing address but the professional representation shall also include the licensee's professional practice location(s).
5. Greenberg's claim that Middlesex Diagnostic was not a mobile diagnostic entity is unsupported by any competent evidence and is another instance of fraud. The only address submitted to Allstate and this court was a post office box. The court does not have to determine whether Dr. Sorin or medical doctors took a trailer or their equipment to any location, because N.J.A.C. 13:35-2.5 does not require that a diagnostic testing entity be mobile but they are also subject to its various conditions.

IV.
Dr. Greenberg and Middlesex Diagnostic Associates, P.A. have committed numerous violations that deprive them of the right to recover or retain personal injury protection ("PIP") benefits.
"Moreover, a medical services provider's failure to comply with the standards promulgated by the Board of Medical Examiners make it ineligible to receive PIP reimbursement." Allstate Ins. Co. v. Orthopedic Evaluations, Inc., 300 N.J.Super. 510, 515, 693 A.2d 500, 503 (App.Div.1997).
Services performed by a mobile diagnostic testing laboratory owned by a licensed chiropractor do not qualify for PIP reimbursement. Prudential Prop. & Cas. Ins. Co. v. Midlantic Motion X-Ray, Inc., 325 N.J.Super. 54, 737 A.2d 711 (Law Div.1999). Because the chiropractor was not a physician holding a plenary license issued by the New Jersey State Board of Medical Examiners, the court concluded that the laboratory violated N.J.A.C. 13:35-2.5(b), which limited ownership of diagnostic testing facilities to physicians holding plenary licenses. 325 N.J.Super. at 58-60, 737 A.2d 711, 713-15. The Appellate Division recently embraced the holding of Midlantic Motion X-Ray, Inc. in Orozco v. N.J. Mfrs. Ins. Co., A-6444-01 (App. Div. Decided November 5, 2003), p. *177 14, wherein if stated that the regulation prescribes requirements for all such testing "irrespective of the stationary or mobile nature of the facility...."
Middlesex Diagnostic was improperly incorporated and operated because it was not owned and supervised by a medical doctor in violation of N.J.A.C. 13:35-2.5(b).
Dr. Greenberg's explanation that Dr. Sorin was an independent contractor for Middlesex Diagnostic, even if true, is specious because N.J.A.C. 13:35-6.16(f)(3) contemplates such an employment relationship and specifically rejects same as noncompliant with the administrative code:
Associational relationship with other practitioner or professional entity:
For the purpose of this rule, the term "employment" shall include an ongoing associational relationship between a licensee and professional practitioner(s) or entity on the professional practice premises for the provision of professional services, whether the licensee is denominated as an employee or independent contractor, for any form of remuneration. [Emphasis added.]
i. A practitioner may be employed, as so defined, within the scope of the practitioner's licensed practice and in circumstances where quality control of the employee's professional practice can be and is lawfully supervised and evaluated by the employing practitioner. Thus, a practitioner with a plenary license shall not be employed by a practitioner with a limited scope of license, nor shall a practitioner with a limited license be employed by a practitioner with a more limited form of limited license. By way of example, a physician with a plenary license may be employed by another plenary licensed physician, but an M.D. or D.O. may not be employed by a podiatrist (D.P.M.) or chiropractor (D.C.) or midwife or certified nurse midwife (R.M., C.N.M.)....
Here, Roman Sorin, a medical doctor, has been employed, potentially as an independent contractor, by Greenberg, a chiropractor. Since Dr. Sorin's license exceeds the scope of Dr. Greenberg's license, such an employment relationship is improper and in violation of N.J.A.C. 13:35-6.16.

V.
Plaintiffs are entitled to an order granting partial summary judgment against defendants Scott Greenberg, D.C., the Greenberg chiropractic facilities and Middlesex Diagnostic because the Greenberg chiropractic facilities referred claimants to Middlesex Diagnostic, an entity wholly owned by Greenberg. As a result of Greenberg's financial interest in Middlesex Diagnostic, all referrals from the Greenberg chiropractic facilities to Middlesex Diagnostic Associates, P.A. are self-referrals in violation of N.J.S.A. 45:9-22.5 and N.J.A.C. 13:44E-2.7.[2] The employee who referred the patients is irrelevant.

VI.

a. Legislative History of the Self-Referral Statute
The legislative history of the regulations concerning self-referrals of practitioners is helpful. With the sponsorship of Senators Codey and Russo, on January 27, 1989, the New Jersey Senate passed Senate Bill Nos. 734 and 2091, which required, inter alia, physicians, chiropractors and podiatrists to disclose their financial interest in *178 health care services to patients. On February 6, 1989, Governor Kean conditionally vetoed the legislation and returned the bill for reconsideration with certain clarifying amendments. Following the inclusion of those amendments, the Codey-Russo Bill was codified at N.J.S.A. 45:9-22.1 to 22.9. It ultimately defined "significant beneficial interest" to mean "any financial interest..." [N.J.S.A. 45.9-22.4.] The legislation created an exemption of a "significant beneficial interest" for lease arrangements at prevailing rates and interest in publicly traded securities.
On April 19, 1990, partly in response to the pending expiration of the State's Uncompensated Care Trust Fund, Governor Florio created the Governor's Commission on Health Care Costs. The Commission was charged with making recommendations "for regulatory and statutory changes to improve the delivery and financing of health care services in the State."
The Commission submitted its report on October 1, 1990, and set forth a number of recommendations. In forming its recommendation for legislative action, the Commission utilized the term "fiduciary interest," a term considerably broader than the threshold the Legislature initially created when it passed N.J.S.A. 45:9-22.5 eighteen months earlier. ("[a]ny financial interest that is equal to or greater than the lesser of five percent of the whole or $5,000.00.") The Governor's Commission rejected the threshold definition of the Legislature and sought a more inclusive definition of the term "significant beneficial interest."
The Health Care Cost Reduction Act, N.J.S.A. 26:2H-18.50, was enacted on July 1, 1991, to implement recommendations of the Governor's Commission on Health Care Costs. Among other changes, the Act amended the definition of "significant beneficial interest" in Chapter 9 of Title 45 of the Revised Statutes to mean "any financial interest" and specifically eliminated the previous definition which required a threshold financial interest. See N.J.S.A. 45:9-22.5. The legislation also created a "grandfather" provision for practitioners who held a significant beneficial interest in facilities and services prior to July 31, 1991.
The legislative history makes clear that the Legislature was concerned with eliminating the financial incentive to practitioners to refer patients to entities in which they have any financial interest. The Legislature's concern clearly was centered around the belief that practitioners with financial interests in entities are more likely to base their referrals on financial motives instead of sound medical decision-making. The Codey amendment to N.J.S.A. 45:9-22.5 prohibits practitioners from referring patients to entities in which they have "a significant beneficial interest," defined to mean "any financial interest," unless the practitioner falls under the specified exemptions.

b. Greenberg's Violations of N.J.S.A. 45:9-22.5 and N.J.A.C. 13:44E-2.7
Pursuant to N.J.S.A. 45:9-22.4, chiropractors are "practitioners." N.J.S.A. 45:9-22.5(a) provides in pertinent part:
A practitioner shall not refer a patient or direct an employee of the practitioner to refer a patient to a health care service in which the practitioner, or the practitioner's immediate family, or the practitioner in combination with the practitioner's immediate family has a significant beneficial interest; except that, in the case of a practitioner ... who had the significant beneficial interest prior to the effective date of P.L. 1991, c. 187 (C. 26:2H-18.24 et seq.), the practitioner may continue to refer a patient or direct an employee to do so if *179 that practitioner discloses the significant beneficial interest to the patient.
Subsection (b) states that if a practitioner is permitted to refer patients pursuant to the exception in (a), he/she must provide the patient with a disclosure form and post a copy of the disclosure form in a conspicuous place in the practitioner's office. N.J.S.A. 45:9-22.4 defines "significant beneficial interest" to mean any financial interest but does not include lease arrangements at prevailing rates or any interest in publicly traded securities.
None of the defendants herein enjoy status as a "grandfathered" entity as Title 45 defines that term, and they are not permitted to refer patients pursuant to the exception found at N.J.S.A. 45:9-22.5(a).
Dr. Greenberg's "significant beneficial interest" stems from his admitted ownership of Middlesex Diagnostic. Greenberg had a financial incentive to refer patients to Middlesex Diagnostic. All referrals from the Greenberg chiropractic facilities to Middlesex Diagnostic are self-referrals, in violation of N.J.S.A. 45:9-22.5.
In Allstate Ins. Co. v. Orthopedic Evaluations, Inc., supra, 300 N.J.Super. 510, 693 A.2d 500, the Appellate Division made clear that a health care provider must comply with all significant qualifying requirements imposed by law that bear upon the rendition of service. Since the payment of a referral fee bears upon the legality of the services rendered, any services rendered pursuant thereto are not eligible for PIP reimbursement. Id. at 516, 693 A.2d at 503.
Each and every referral of a patient from a Greenberg chiropractic facility to Middlesex Diagnostic also constituted an unlawful referral fee in violation of N.J.A.C. 13:44E-2.7 which provided:
It shall be professional misconduct for a licensee to pay, offer to pay, or to receive from any person any fee or other form of compensation for the referral of a patient. The within prohibition shall not prohibit the division of fees among licensees engaged in a bona fide employment, partnership or corporate relationship for the delivery of professional services. [This was the only change made in 2001, after Middlesex Diagnostic ceased business, which became N.J.A.C. 13:44E-2.6.]
Since Greenberg held a financial interest in Middlesex Diagnostic, every referral from a Greenberg chiropractic facility to Middlesex Diagnostic generated payment to Greenberg, which constituted an impermissible referral fee. The fees for the services rendered by Middlesex Diagnostic based upon referrals from the Greenberg chiropractic facilities were therefore not eligible for PIP reimbursement as a matter of law.

VII.
Dr. Greenberg violated the Fraud Act when he knowingly owned a diagnostic facility in violation of N.J.A.C. 13:35-2.5(b) and employed a plenary licensed physician in violation of N.J.A.C. 13:35-6.16. The Fraud Act expressly provides that the forum for the adjudication of claims under the Act is in the Superior Court. Section 7(a) of the Fraud Act prescribes that, "[a]ny insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction."
The practice of chiropractic is a highly regulated industry. It is well settled that individuals who practice in highly regulated industries are charged with knowledge of the laws and regulations which govern that particular industry. See e.g. Graham v. New Jersey Real Estate Comm'n, 217 N.J.Super. 130, 138, 524 A.2d 1321, 1326 (App.Div.1987) ("Every person is conclusively *180 presumed to know the law, statutory and otherwise.")
In Material Damage Adjustment Corp. v. Open MRI of Fairview, 352 N.J.Super. 216, 799 A.2d 731 (Law Div.2002), the court held that an MRI facility was not entitled to receive PIP reimbursement for services rendered prior to having received a license to operate an MRI facility. In so holding, the court stated:
A belief, even a good-faith belief, that one is performing these services in a reasonable or otherwise sound manner is not a defense. As a matter of law, entities wishing to engage in a highly regulated business which directly impacts upon the safety and welfare of the public, such as the delivery of health care, are constructively on notice of legal requirements governing its practice and operations. Those who, nonetheless, venture forth without first obtaining the governmental approvals, whether out of ignorance or arrogance, do so at their own risk and must face the legal consequences for their actions. Sound public policy can accept no lesser standard.
[Id. at 227, 799 A.2d at 738.]
The court further held that the MRI facility's knowing submission of Health Insurance Claim Forms ("HICFs") and receipt of PIP payments at a time when it knew it was ineligible to receive same, was a material misrepresentation and constituted a violation of the Fraud Act. The court awarded the insurer restitution of all payments and treble damages under the Fraud Act.
Section 4(a) of the Fraud Act provides that [a] person or practitioner violates this act if he:
(1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company ... or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled.
[N.J.S.A. 17:33A-4.]
Thus, each and every submission of documents to an insurance carrier in support of payment for PIP medical benefits to which a health care provider knowingly is not entitled or concealment of material facts, such as self interest, is a separate offense.
As a health care professional, Greenberg is charged with knowledge of the various rules and regulations which govern the practice of chiropractic. The submission of HICFs and supporting documents for PIP medical benefits knowingly by a chiropractor for payment of diagnostic testing services constitutes a violation of the Fraud Act because Greenberg, a chiropractor, could not have lawfully sought payment for these services pursuant to N.J.A.C. 13:35-2.5(b).
Similarly, Greenberg, a chiropractor, could not have lawfully employed, even as an independent contractor, Dr. Sorin, a *181 plenary licensed physician. Common sense dictates that a chiropractor must know that he cannot reap the benefits received from a medical doctor. The knowing submission of Middlesex Diagnostic bills for which Dr. Sorin received some payment from Middlesex Diagnostic for the performance of services was a knowing violation of the Fraud Act.
Any and all Middlesex Diagnostic submissions for payment to plaintiffs contained material misrepresentations; that is, an implicit representation, that the entity was owned and controlled by a plenary licensed physician and that Greenberg, a chiropractor, did not employ a plenary licensed physician such as Dr. Sorin. As such, plaintiffs are entitled to an order granting summary judgment as to Count Six of their First Amended Complaint.
Furthermore, each and every one of the referrals to Middlesex Diagnostic and the submission of bills, HICFs and reports in furtherance of payment for the services contained material misrepresentations; that is, an implicit representation that Greenberg did not have a "significant beneficial interest" in Middlesex Diagnostic, the entity to which his chiropractic facilities referred patients.[3] Each and every submission of bills, HICFs and physicians' reports in support of payment for services rendered pursuant to an unlawful referral, was a knowing violation of the Fraud Act, since Greenberg is presumed to know and understand the regulations which govern the delivery of health care in this state.

VIII.
This court is clearly and convincingly satisfied that Dr. Greenberg and his corporations knowingly violated N.J.S.A. 17:33A-4(a)(1), (2), and (3). No reasonable jury could conclude that they did not knowingly conceal material information and were not legally entitled to PIP benefits. Therefore, "it is so one-sided that [plaintiffs] must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146, 154 (1995).

IX.
The Greenberg defendants have engaged in a "pattern" of fraudulent behavior, and plaintiffs are entitled to treble damages. According to the definition contained within the Fraud Act, "pattern" means five or more related violations of the Fraud Act. The Fraud Act states that, "[v]iolations are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner charged with violating the Fraud Act." Each false claim constitutes a separate fraudulent act. Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256, 1259 (1992). Thus, the pattern requirement has been met by the dozens of filings and plaintiffs are entitled to treble damages pursuant to section 7(b) of the Fraud Act.
Plaintiffs seek a money judgment for the full amount of their claims against all defendants. Because of Dr. Greenberg's licensure and knowledge and the manner in which he carried on his various practices, there is clear and convincing evidence of his knowing intent to defraud Allstate Insurance Company. Therefore, Allstate is entitled to judgment against Scott Greenberg, D.C. and Middlesex Diagnostics, P.A. for compensatory damages of $111,604.11, plus attorney's fees of $7,831 totaling *182 $119,435.11, which must be trebled to a total of $358,305.33.
Allstate seeks to hold all five Greenberg chiropractic facilities jointly and severally liable for the entire amount of compensatory damages, yet there is no basis to hold each separate and distinct corporation jointly and severally liable for the claims against another corporation when there is no evidence that they were not a bona fide corporation. "A corporation is an entity separate from its stockholders." Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153, 1156 (1982). The reason why there were five separate chiropractic corporations is not relevant to this motion.
Therefore, judgment will also be entered in favor of Allstate Insurance Company against the five Greenberg chiropractic facilities for compensatory damages in the amount of:

 Access Chiropractic Associates, P.C. = $26,206.54
 Apex Chiropractic Associates, P.A. = $28,727.78
 Chambersberg Chiropractic Associates, P.C. = $ 8,556.26
 Easton Chiropractic, P.C. = $21,484.72
 Pace Chiropractic P.C. = $26,628.81

The aforesaid amounts must be trebled to make a judgment in favor of the plaintiff, Allstate Insurance Company against:

 Access Chiropractic Associates, P.C. = $78,619.62
 Apex Chiropractic Associates, P.A. = $86,183.34
 Chambersberg Chiropractic Associates, P.C. = $25,668.78
 Easton Chiropractic, P.C. = $64,454,16
 Pace Chiropractic P.C. = $79,886.43

NOTES
[1] This requirement was not changed when N.J.A.C. 13:35-2.5(b) was repealed, effective February 20, 2001. It merely was continued as part of N.J.A.C. 13:35.2.6(d). The effective date of repeal was well after Middlesex Diagnostic ceased operating in December 1999.
[2] Recodified to N.J.A.C. 13:44E-2.6 and amended by R.2001 d.257, effective August 6, 2001.
[3] The court notes that Greenberg failed to provide any information in Box 25, "Signature of Physician or Supplier," and it does not contain the name of a physician or medical professional  a tacit acknowledgement by Greenberg that his receipt of those funds was improper.